**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **RANDOLPH HUGHES,** : | |
| : | |
| **Plaintiff,** : | |
| : | **Case No. 2:04-CV-744** |
| v. : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| **NEIL SANDERS, II,** : | |
| : | **Magistrate Abel** |
| **Defendant.** : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss, Plaintiff's Motion for Summary Judgment, and Defendant's Cross-Motion for Summary Judgment.  Jurisdiction is proper pursuant to 28 U.S.C. § 1334[1] and Federal Rule of Bankruptcy Procedure 4007(b).[2] The

---

[1] 28 U.S.C. § 1334 reads:
Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
*Id*.

[2] The Advisory Committee Note to Rule 4007(b) states that jurisdiction over Section 523(a)(7) is held concurrently by the bankruptcy court and any appropriate nonbankruptcy forum.  The First Circuit in *Whitehouse v. LaRoche,* 277 F.3d 568, 576-77 (1st Cir. 2002), elaborated as follows:
> Bankruptcy courts and nonbankruptcy courts alike are vested with concurrent jurisdiction over nondischargeability proceedings arising under Bankruptcy Code § 523(a)(7). Consequently, at their option, creditors seeking a nondischargeability determination need not submit to the jurisdiction of the bankruptcy court, but instead may invoke the jurisdiction of any appropriate nonbankruptcy forum either before or after the bankruptcy proceeding has been closed.

*Id*. (citations omitted).

Court **GRANTS** Defendant's Motion to Dismiss and finds Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment **MOOT**.

## II. FACTS

The facts in this case are undisputed. On April 1, 2002, Plaintiff, Randolph Hughes, filed an action against Defendant, Neil Sanders II, for legal malpractice. *Hughes v. Sanders*, No. 02-306 (S.D. Ohio filed Apr. 1, 2002) (*Hughes I*). In *Hughes I*, Plaintiff alleged that Sanders committed malpractice while representing Hughes in an underlying case against Ford Motor Company. *Hughes v. Ford Motor Co*. On January 7, 2004, the Honorable Gregory Frost ("Judge Frost") found Sanders in contempt for the following: (1) failure to tender, in full, the ordered monetary sanction imposed by the court's November 18, 2003 order;[3] (2) failure to appear as required by the court's December 5, 2003 order; and (3) failure to comply with the court's prior discovery orders. *Hughes I Contempt Order* (Jan. 7, 2004) (hereinafter "Contempt Order"). Judge Frost then imposed a sanction of default judgment pursuant to Federal Rule of Civil Procedure 37(b)(2)(C)-(D),[4] stating:

---

[3]On November 18, 2003, Defendant agreed to pay a $2,800.27 sanction imposed by Magistrate Judge King by November 26, 2003. On November 28, 2003, Defendant filed a Motion for Reconsideration, stating that he had paid Plaintiff $400.00, but needed until December 31, 2003 to pay the full amount.

[4]Federal Rules of Civil Procedure 37(b)(2)(C)-(D) reads:
(b) Failure to Comply With Order.
    (2) Sanctions by Court in Which Action is Pending.
        (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
        (D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;
FED. R. CIV. P. 37(b)(2)(C)-(D).

> Defendant's conduct is willful and wanton and constitutes a complete disregard for this Court and for the obligations his status as a party to this lawsuit and as an attorney place upon him. There is no evidence of excusable and justifiable neglect here, but there is evidence of a continuing pattern of bad faith on behalf of Defendant. He has abused the judicial process.

*Contempt Order* at Section (7).

Judge Frost scheduled a damages hearing for January 12, 2004. At that hearing, Defendant, once again, failed to appear. A court-appointed expert, Columbus-area attorney John Marshall, testified that but for Sanders' legal malpractice, Plaintiff would have prevailed against Ford Motor Company on his claims for lost wages and benefits, emotional distress, attorney's fees, and litigation costs. On January 21, 2004, the Court ordered Defendant to pay Plaintiff $894,316.81 for wages and interest in the underlying case; $143,602.25 for attorney's fees, costs, and interest in the underlying case; and $25,873.95 for attorney's fees, costs, and interest in the legal malpractice action. The total judgment against Defendant was $1,063,793.01.

On June 9, 2004, Defendant filed Chapter 7 Bankruptcy in the Central District of California, and listed Plaintiff as a creditor. On August 12, 2004, Plaintiff brought this action challenging the dischargeability of the debt pursuant to 11 U.S.C. § 523(a)(7). On October 4, 2004, Defendant filed his Motion to Dismiss. Subsequently, the parties filed cross-motions for summary judgment. This Court held oral argument on all motions on April 4, 2005.

### III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983). A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the [p]laintiff

can prove no set of facts in support of his claim which would entitle him to relief." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). This Court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Conley*, 355 U.S. at 45-46. While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (quoting *Conley*, 355 U.S. at 47). Though liberal, this standard of review requires more than the bare assertion of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id.*

## IV. ANALYSIS

### A. Venue

Although this Court has the power to transfer venue to California, where the bankruptcy proceeding is pending,[5] Defendant has waived any objection to venue. 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."); *see Al-Muhaymin v.*

---

[5] 28 U.S.C § 1412 ("A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.").

*Jones,* 895 F.2d 1147, 1149 (6th Cir. 1990) ("Unlike jurisdictional defects, venue objections can be waived."). Thus, venue is properly in this Court.[6]

### B. Collateral Estoppel

As a threshold matter, Plaintiff argues that Defendant is collaterally estopped from relitigating whether the default judgment was penal in nature. Plaintiff asserts that Judge Frost's imposition of the default judgment was undeniably penal in nature because it was punishment for Sanders' wrongdoing. Plaintiff then argues that this Court can automatically find the debt nondischargeable because, as Plaintiff construes § 523(a)(7), a debt that is penal in nature is per se nondischargeable.

Under federally-developed rules of collateral estoppel, a plaintiff must establish that (1) the precise issue was raised in the prior proceeding, (2) the issue was actually litigated, and (3) the determination of the issue was necessary to the prior proceeding's outcome.[7] *In re Calvert,* 105 F.3d 315, 317 n.2 (6th Cir. 1997) (citation omitted). Under the first prong, the issue litigated in the underlying case must be *identical* to that being litigated in the dischargeability case. In *In re Decteroff*, 133 F.3d 210 (3d Cir. 1997), the defendant in the underlying case was sued for fraud and "simply elected not to comply with court orders." As a result, the court imposed a Rule 37 default judgment against him. He then filed for bankruptcy. In a subsequent

---

[6]28 U.S.C. § 1409 provides that a claim arising out of or related to Title 11 may be commenced in a district court that would have been proper under "applicable nonbankruptcy venue provisions." *Id*. The applicable nonbankruptcy provision in this case is 28 U.S.C. § 1391(b), which explains that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." *Id*. Because the default judgment occurred in this judicial district, Plaintiff properly filed in this Court.

[7]Federal issue preclusion law applies to federal judgments in federal question cases. *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 507-08 (2001).

dischargeability suit against the defendant-turned-debtor, the plaintiff objected to discharging the default judgment because the debt was attributable to fraud, and thus nondischargeable under § 523(a)(2).[8] The court agreed with plaintiff and found that Decteroff was collaterally estopped from arguing that his debt was not attributable to fraud, stating that Decteroff could have litigated the fraud issue in the underlying suit, but chose not to. The court explained that "[t]o hold otherwise would encourage behavior similar to [defendant's] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple" to argue the same issue two times. *Id*. at 215; *see also In re Bush*, 62 F.3d 1319, 1324 (11th Cir.1995) (finding that defendant's deliberately obstructionist tactics in the first district court fraud action, which resulted in a Rule 37 default judgment, precluded defendant from arguing, in the dischargeability proceeding, that he had not committed fraud pursuant to 523(a)(2)).[9]

In the case sub judice, unlike the above cases, which are clear examples of debtors trying to relitigate *identical* issues, such as fraud, willfulness or malice, this case does not involve a similarly clear cut issue. The main issue in this case is whether the *Hughes I* default judgment was penal in nature or compensatory in nature. This identical issue was not raised in Judge Frost's court. Although the Contempt Order's underlying findings may lend credence to the

---

[8]Section § 523(a)(2) exempts from discharge debts stemming from fraud. The statute, in pertinent part, states that an individual debtor is not discharged from any debt "obtained by--(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . ." 11 U.S.C. § 523(a)(2).

[9]Collateral estoppel in the dischargeability context is typically applied with regard to Sections 523(a)(2) (exempting debts attributable to fraud), 523(a)(4) (exempting debts that stem from embezzlement or larceny), and 523(a)(6) (exempting debts stemming from "willful and malicious injury by the debtor to another entity or to the property of another entity").

conclusion that the default judgment was penal in nature, this precise issue was never raised; thus, Defendant cannot be collaterally estopped from litigating it here.[10]

### C. Dischargeability

At issue in the case is whether the Rule 37 default sanction imposed upon Defendant is dischargeable pursuant to 11 U.S.C. 523(a)(7), which reads as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> > (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . .

11 U.S.C. § 523(a)(7).

Defendant-debtor argues that section 523(a)(7) does not apply because the debt in question does not satisfy the statute's three requirements: (1) it must be "for a fine, penalty, or forfeiture"; (2) it must be "payable to and for the benefit of a governmental unit"; and (3) it must not be "compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). Defendant acknowledges that in *Kelly v. Robinson*, the seminal case concerning Section 523(a)(7), the Supreme Court found a criminal restitution order nondischargeable even though the debt was not payable to a governmental unit, as required by 523(a)(7), and despite the debt having been

---

[10]In the interest of completeness, the Court addresses the remaining two prongs of the collateral estoppel inquiry. Contrary to Defendant's argument that a default judgment cannot fulfill the "actually litigated" requirement, many courts have found that when a defendant has engaged in contumacious and dilatory tactics in the first proceeding, he cannot now "have a second bite of the apple." *In re Bush*, 62 F.3d at 1324 (finding that a default judgment, when imposed because of defendant's opprobrious behavior, fulfills the "actually litigated" prong) (citation omitted). As for the third element, "the determination of the issue must have been necessary to the outcome," Plaintiff's argument falls short. Even assuming Judge Frost found that the sanction was penal, as opposed to compensatory, in nature, it is not clear that this finding would be necessary to the imposition of a default judgment.

calculated to compensate the victim for the money lost, in contravention of 523(a)(7). The Supreme Court explained that a broad and non-text-based interpretation was appropriate with regard to criminal restitution because of the penal nature of criminal restitution, the deference due to state criminal systems, the general rehabilitative goals of restitution, and the already established state of the law, which made criminal restitution nondischargeable. *Kelly*, 479 U.S. 36, 53 (noting "[t]he criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole," and holding, "[i]n light of the strong interests of the States, the uniform construction of the old Act over three-quarters of a century, and the absence of any significant evidence that Congress intended to change the law in this area, we believe this result best effectuates the will of Congress").

Defendant argues that the default judgment in this case does not fall into the category of "penal" exceptions envisioned by the Supreme Court in *Kelly* because the judgment was not ordered pursuant to a criminal proceeding, the rehabilitative goals mentioned in *Kelly* are not present here, and there is no similar historically-created exception for default judgments. Thus, Defendant asserts, the text alone dictates whether the default judgment is dischargeable. Applying the text, Defendant emphasizes both that the default judgment, which is to be paid to Hughes, is not "payable to and for the benefit of a government unit," and that Judge Frost intended the debt to be "compensation for actual pecuniary loss" because he based the default judgment's amount on Plaintiff's exact losses.

Conversely, Plaintiff argues that like the criminal restitution at issue in *Kelly*, the default judgment in the case sub judice is penal, not compensatory, and thus nondischargeable regardless of its compliance with the statute's exact text. Plaintiff urges this Court to consider

the "totality of the circumstances," which, Plaintiff argues, demonstrates that Judge Frost ordered the default judgment to punish Defendant for flagrant disobedience of the court's orders. *See, e.g., In re Winn*, 92 B.R. 928 (Bankr. M.D. Fla. 1988) (looking to the totality of the circumstances, as opposed to the text, to determine whether the contempt judgment is actually the type included in Section 523(a)(7)). Plaintiff acknowledges that the debt is not payable to a government unit and that Judge Frost set damages according to Plaintiff's losses, but argues that these issues are not relevant so long as the debt was imposed to punish the wrongdoer and uphold the dignity of the court.

Although the Court finds that Defendant's behavior in Judge Frost's court was utterly reprehensible; the Court reluctantly concludes that the law requires discharge.

### 1. Fine, Penalty, or Forfeiture

Section 523(a)(7) first requires that the debt in question be a fine, penalty, or forfeiture. This prong is rarely litigated. Indeed, its backseat role is aptly demonstrated in Defendant's concession: "Defendant concedes that the default sanction imposed upon him amounts to a 'penalty' as that term is commonly understood and that the debt owed plaintiff arises from it."[11] (Def. Mot. to Dis. at 4-5). The court agrees. Judge Frost imposed the default judgment, in part, to penalize Sanders for his contumacious behavior, stating: "[A]lthough cognizant of the severity of a sanction of default, the Court concludes that such a sanction is necessary, sufficient, and appropriate in light of the foregoing findings." *Contempt Order* at Section (12). Sanction is

---

[11] Defendant's Motion for Summary Judgment, however, debates this point, but offers no explanation for the change in position: "[T]here is no 'fine' or 'penalty' under 11 U.S.C. § 523(a)(7)" because Judge Frost imposed "no fine, incarceration, fee, cost or sanction[,] all of which are available to the court under its inherent powers." (Def. Mot. Summ. Judg. at 12-13).

defined as "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order." BLACK'S LAW DICTIONARY 1341 (7th ed. 1999). Thus, as Defendant acknowledges, the default judgment is a "penalty" under Section 523(a)(7).

### 2. Payable to and for the Benefit of a Government Unit

Plaintiff's argument that the state's benefit need not be pecuniary has some support.[12] Indeed, several courts have applied 523(a)(7) even where the debt is not "payable to a governmental unit" or has been calculated to compensate for "actual pecuniary loss." The seminal case finding that Section 523(a)(7) need not be interpreted textually is *In re Marini*, 28 B.R. 262 (Bank. E.D.N.Y. 1983). There, the debtor had been assessed a $2,000 fine for failing to comply with a temporary restraining order. The fine was not payable to a governmental unit; yet, the court found: "[T]he fact that the fine was to be paid directly to the plaintiff is not necessarily relevant," reasoning, "[t]he key is whether it was punitive or compensatory." *Id*. at 266. The court then looked at the totality of the circumstances and found the $2,000 fine was indeed punitive. First, the court noted that the state court deliberately used the word "fine." Then, the court emphasized that other provisions of the state court's order provided compensation for the plaintiff, and concluded that the $2,000 was clearly intended by the state court as "a measure to punish the defendant for disobeying a court ordered injunction." *Id*. Several other courts have followed *Marini*'s rationale, finding that if the totality of the circumstances indicated the debt was penal in nature, section 523(a)(7) precludes discharge.

---

[12]The Sixth Circuit has said little on 523(a)(7) as applied to civil penalties; however, however, to the extent that it has spoken on this matter, it does not appear to interpret the statute in a sweeping manner. For example, in *United States v. WRW Corp.*, 986 F.2d 138, 145 (6th Cir. 1993), the Court stated, "Had the size of the penalty been calculated according to proof of actual pecuniary loss, it would not be excepted from discharge under § 523(a)(7)." *Id*. at 145.

*United States Dept. of Housing & Urban Development v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 928 (4th Cir. 1995) ("[S]o long as the government's interest in enforcing a debt is *penal*, it makes no difference that injured persons may thereby receive compensation for pecuniary loss."); *In re Allison*, 176 B.R. 60, 64 (S.D. Fla. 1994) (finding nondischargeable a contempt judgment based on "the attorneys' fees and costs expended by plaintiffs in detecting, investigating and pursuing the contemptuous conduct of Allison," because "a fine or penalty need not be *payable* to a governmental entity in order to be for the *benefit* of a governmental agency" if it was awarded to vindicate the dignity and authority of the court"); *In re Winn*, 92 B.R. at 938, 940 (finding that although a daily contempt-based fine, $500 a day for two years, was not payable to a government unit, it was nondischargeable because "the fine was . . . imposed as a penalty to vindicate the dignity and authority of the court, and thus, the fine was for the benefit of a governmental unit, as required by § 523(a)(7)"); *In re Gedeon,* 31 B.R. 942, 946 (Bankr. D. Colo. 1983) (finding nondischargeable a $42,500 civil contempt penalty, which represented a cumulative daily $500 fine for defendant's non-compliance and was payable to plaintiff, because it upheld the dignity of the court).

The Court respectfully disagrees with this line of cases. Although the policy reasons behind the non-textual interpretation are attractive, particularly in light of Sanders' repugnant antics in Judge Frost's court, the Court finds Defendant's argument in favor of adopting 523(a)(7)'s plain meaning persuasive. *See generally United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (internal quotation marks omitted).

First, the cases relied upon by Plaintiff are easily distinguished from the case sub judice because they involve limited penalties that punish the debtor for opprobrious conduct, as opposed to rewarding the creditor for his loss. *See Guariglia v. Community Nat'l Bank & Trust, Co.*, 382 F. Supp. 758, 761 (E.D.N.Y. 1974) (framing the issue as whether the contempt citation was issued simply to collect a judgment owed to the creditor, or whether it had been imposed to uphold the court's dignity, finding only the latter circumstance nondischargeable); *see also In re Winn*, 92 B.R. at 938, 940 (Bankr. M.D. Fla. 1988) (finding nondischargeable a daily contempt-based fine, $500 a day for two years); *In re Gedeon*, 31 B.R. 942, 946 (Bankr. D. Colo. 1983) (finding nondischargeable a cumulative daily $500 fine); *In re Marini*, 28 B.R. 262, 265-66 (E.D.N.Y. 1983) (finding nondischargeable a $2,000 fine for contempt). In contrast, the default judgment here was calculated specifically to collect a judgment owed to Hughes.

Second, the cases cited by Plaintiff represent a minority view that, in recent years, has become less favored because it makes ambiguous a seemingly unambiguous statute. As explained by the court in *In re Strutz*, 154 B.R. 508 (Bankr. N.D. Ind. 1993), "Congress has . . . determined that only those [debts] that are 'payable to and for the benefit of a governmental unit' qualify" for exception from discharge, and "[i]n this regard, the language of the statute is unambiguous." *Id*. at 510. In *Strutz*, the debtor, an attorney, was found in contempt of state court for the "decidedly unprofessional manner in which he conducted previous litigation with Commercial Bankers Life Insurance." *Id*. at 509. The state court ordered him to pay Commercial Bankers $33,625.50 for their attorney fees expended in the state court matter. *Id*. After Strutz filed for bankruptcy, Commercial Bankers argued that the $33,625.50 was nondischargeable. Commercial Bankers, like Plaintiff in the case sub judice, conceded that "the

debt in question is not payable to a governmental unit," but argued, citing *Marini* and its progeny, that the "court should focus on the intent of the judge issuing the penalty" who imposed the sanction "to uphold the dignity of the court" and noting that such a sanction was meant to bestow a non-pecuniary benefit on a governmental unit. *Id*. The court disagreed and found that the plaintiff's non-textual interpretation "seemingly read[ ] the words 'payable to' out of the statute" and held that the statute required the contempt judgment to be payable to a government unit. *Id*. at 509-10.

> A debt is nondischargeable only if *both* criteria are met. Thus, a debt must be payable to a governmental unit to be nondischargeable under § 523(a)(7). If the obligation is owed to something other than a governmental unit, the debt will be a dischargeable one. This remains true even if the payment of the debt will somehow benefit that governmental unit. The courts that focus solely upon the "for the benefit of" language of § 523(a)(7) have mistakenly overlooked an equally important portion of the statute.

*Strutz,* 154 B.R. at 510 (citation omitted); *see also In re Friedman*, 253 B.R. 576, 579 (Bankr. S.D. Fla. 2000) (finding dischargeable a $242,090.85 discovery sanction from another federal court because it was payable to plaintiff, stating that the cases cited by plaintiff, *Allison*, *Winn*, *Gedeon*, and *Marini*, "rely upon the 'for the benefit of' language and ignore the 'payable to' a governmental unit requirement"); *In re Wood*, 167 B.R. 83, 89 (Bankr. W.D. Tex. 1994) ("The fact that one of the purposes for which the sanction was awarded was to uphold the dignity of the legal process in federal court as well as the court itself does not allow this Court to dispense with the other stated requirements of § 523(a)(7).").

Although not in the contempt context, the Third Circuit and the Seventh Circuit have both endorsed a textual interpretation of the statute. In *In re Towers*, 162 F.3d 952, 956 (7th Cir. 1998), the court found a civil restitution order dischargeable because the $210,000, although

payable to the Attorney General, was to be redistributed to the victims of the debtor's fraud. *Id*. at 955. The court rejected Illinois' argument "the state's benefit need not be pecuniary," finding that the statute's language required that the penalty's benefit to the government had to be a monetary one, as opposed to an abstract one.

> Perhaps one could reply that the state's benefit need not be pecuniary. Deterrence of fraud is a benefit to all of the state's citizens. If restitution adds to the punch of the criminal law, then so much the better. Some language in *Kelly* suggests this possibility. But the context in which "benefit" appears–"*payable to and* for the benefit of a governmental unit"--implies that the "benefit" in question is the benefit of the money that is "payable to" the governmental unit.

*In re Towers,* 162 F.3d 952, 956 (7th Cir. 1998). Similarly, in *In re Rashid*, 210 F.3d 201, 208 (3d Cir. 2000), the court explained: "[W]e would pervert the clear, unambiguous language of § 523(a)(7) if we found that Rashid's restitution obligation was 'payable to' a governmental unit" because the record made clear that "the benefit-- the money--is ultimately payable to the victims." *In re Rashid*, 210 F.3d at 208. Moreover, the court found that "[t]he word 'payable' clearly casts an economic light over the phrase that suggests that the benefit must be conferred from the monetary value of the debt to be paid by the defendant and not the more abstract benefit of criminal deterrence."

Third, the Court notes that there is little reason to heed Plaintiff's request to stretch the interpretation of § 523(a)(7) because another bankruptcy provision, 11 U.S.C. § 523(a)(6), would likely have precluded discharge had Plaintiff filed properly under that provision. *See Towers*, 162 F.3d at 956 (noting that "[i]f there were no way to protect the deterrence effects of restitution except by hammering away at 'for the benefit of' until it fit the mold, then a court might be tempted," but concluding that the creditor could have turned to other provisions of the bankruptcy code to protect the debt from discharge had the creditor not "snoozed through

[debtor's] bankruptcies"). Section 523(a)(6) prevents discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." Indeed, at the default hearing, Judge Frost explained that the judgment would not be dischargeable because it was grounded in *willful* and wanton conduct. He stated as follows to Plaintiff's counsel:

> Ms. Cunningham, maybe I can alleviate your fears. Under no circumstances do I intend to make this judgment a dischargeable judgment in bankruptcy. The language needed for that will be put in the order so that - - I mean the Court finds that the defendant has been willful, wanton, and that the judgment is being entered as a result of sanctions and contempt of court.

*Contempt Hearing* (Jan. 7, 2004).

Noting this potential overlap, the Court consulted the adversary docket for Defendant's bankruptcy case, which is pending in the United States Bankruptcy Court of the Central District of California.[13] *In re Sanders*, Case No. 04-11496, Adversary Case No. 04-1163 (Bankr. C.D. Cal). The docket reveals that Plaintiff, on December 29, 2004, filed an objection to discharge pursuant to § 523(a)(6); however, the objection was dismissed by the bankruptcy court because it had been filed in an untimely manner.[14] Unfortunately, the Plaintiff's failure to file correctly his

---

[13]The Advisory Committee Note to Rule 4007(b) states that jurisdiction over Section 523(a)(7) explains that the bankruptcy court has exclusive jurisdiction to determine the dischargeability of debts under §§ 523(a)(2), (4) or (6) of the Code. Thus, Plaintiff could not have filed an objection to discharge pursuant to 523(a)(6) in this Court.

[14]On October 26, 2004, at Hughes' request, the bankruptcy court granted an extension of time in which to file a complaint objecting to discharge pursuant to 11 U.S.C. § 727. See Bankruptcy Docket, Case No. 04-11496, Docket No. 42 (filed Oct. 26, 2004). When Hughes filed the complaint, however, it included an objection to the bankruptcy pursuant to 11 U.S.C. § 523(a)(6), a claim which had not been explicitly permitted by the court's initial extension of time. *See Adversary Docket*, Case No. 04-1163, Docket No. 1 (filed Dec. 29, 2004). The bankruptcy court held a status conference to discuss the § 523(a)(6) claim, after which point Hughes appears to have voluntarily withdrawn the § 523(a)(6) objection. *See* Docket No. 3 (filed Jan. 3, 2005). On January 28, 2005, Hughes moved to amend the complaint to include a § 523(a)(6) objection; but, the bankruptcy court denied this motion on April 6, 2005. *See* Docket

§ 523(a)(6) objection cannot be remedied by this Court.  In sum, the Court finds 523(a)(7) inapplicable and concludes that the penalty must be discharged.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.  Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment are **MOOT**.

**IT IS SO ORDERED.**

     s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**United States District Court Judge**

**DATED:  June 23, 2005**

---

No. 17 (filed Jan. 3, 2005).  Thus, Plaintiff has been barred from filing an objection pursuant to § 523(a)(6) in the bankruptcy court.